IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BERNON L. HOWERY, # B-12703,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-1134-NJR |
| | ) |
| **RICKY HARRINGTON** | ) |
| **and DR. SHEARING,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff is currently incarcerated at Menard Correctional Center ("Menard"), serving a life sentence for murder and aggravated arson. He has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff also filed another lawsuit at the same time he brought this case (*Howery v. Atchinson*, Case No. 14-cv-1133-JPG, filed Oct. 21, 2014). That matter is also under consideration by Judge J. Phil Gilbert.

In the instant case, Plaintiff claims that Defendant Shearing (a Menard physician) has been deliberately indifferent to his serious medical condition. He also seeks to hold Defendant Harrington (the former Menard Warden) liable as the chief administrator of the prison.

Plaintiff's claims stem from an injury he sustained on September 10, 2013. At that time, Plaintiff was 62 years old. He attempted to lift his property box, which was being transported in connection with his court writ, when something "snapped," and he felt a sudden, intense pain in his lower left back (Doc. 1, p. 9). He screamed in pain as his left leg "collapsed." *Id*. Plaintiff was immediately taken to the Health Care Unit in a wheelchair, where he was seen by Defendant Shearing.

Defendant Shearing ignored Plaintiff's attempts to tell him about the back injury and the location of his pain. When Defendant Shearing realized that Plaintiff could not get off the examining table, he ordered x-rays of Plaintiff's kidney area. Defendant Shearing "guessed" that Plaintiff was suffering from kidney stones, despite Plaintiff's protestations that he had never had kidney or gallstones (Doc. 1, p. 10). Plaintiff's pain had spread from his hip to the inside of his left thigh and toward his left knee.

Defendant Shearing ordered an I.V. for Plaintiff to induce urination, and he kept Plaintiff overnight in the infirmary. Plaintiff complains that Defendant Shearing gave him no pain medication, however, he notes that a "med tech" gave him some brown pain pills that proved to be ineffective (Doc. 1, p. 23). During the night, Plaintiff twice pulled the needle out of his hand because the I.V. fluid was empty, and he feared that an air bubble would enter his bloodstream and kill him. The next day, a different doctor discharged Plaintiff and ordered a few days' supply of naproxen for his pain, which did not work. *Id*.

Plaintiff requested medical treatment again because his pain had spread and grown worse (Doc. 1, p. 23). He was seen on September 20, 2013, by a med tech, who said he had injured his sciatic nerve. The med tech ordered Plaintiff to rest and stay off his feet; the med tech also gave Plaintiff pain medication for the next week. *Id*. Plaintiff was given a "medical lay-in" and "feed-in-cell" permit for September 20 through 24 (Doc. 1, p. 17).

Plaintiff saw Defendant Shearing again a few days later. Dr. Shearing briefly examined Plaintiff but offered no diagnosis (Doc. 1, p. 23). He ordered more x-rays and issued Plaintiff a "slow walk" permit, but took Plaintiff off the eat-in-cell permit and did not order any more pain medication (Doc. 1, pp. 11, 23).

The x-rays of Plaintiff's back and left side were performed on October 3, 2013. When

Plaintiff heard nothing about the results, he sent a request to Defendant Shearing on October 15, 2013. The next day, a med tech came to see Plaintiff and informed him that he had a type of arthritis. She gave him a few Tylenols for pain, however, his hip, thigh, and knee continued to hurt (Doc. 1, p. 23).

On October 21, 2013, Plaintiff filed a grievance claiming inadequate medical treatment (Doc. 1, pp. 22-23). He filed a follow-up grievance on November 6, 2013 (Doc. 1, p. 35). He never got any response to either grievance until May 8, 2014, when a new counselor spoke to him about the matter (Doc. 1, p. 6). She later informed Plaintiff that he had no pending medical grievances.

Plaintiff complains that Defendant Shearing's response to his medical needs was inadequate because he never diagnosed Plaintiff's injury, never treated his pain, and offered no other treatment after ordering the second x-ray and issuing the slow-walk permit in October 2013. According to Plaintiff, Defendant Harrington should have ensured that Plaintiff received adequate treatment once he learned about Plaintiff's grievances against Dr. Shearing. Plaintiff now seeks injunctive relief to provide him with "immediate and thorough medical treatment including functional pain medication and an MRI, braces (if needed), and therapy," as well as compensatory and punitive damages (Doc. 1, p. 14).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

After fully considering the allegations in Plaintiff's complaint and relevant exhibits, the Court concludes that the complaint fails to state a constitutional claim upon which relief may be

granted against either Defendant. The complaint shall therefore be dismissed. However, Plaintiff shall be given the opportunity to submit an amended complaint as to his claim that Defendant Shearing was deliberately indifferent to his medical needs. If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire action shall be dismissed, and the dismissal shall count as a "strike" pursuant to 28 U.S.C. § 1915(g). The amended complaint shall be subject to review pursuant to § 1915A.

**<u>Deliberate Indifference to Serious Medical Needs</u>**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff describes an injury and painful condition that clearly required medical attention. The complaint thus satisfies the objective component of an Eighth Amendment claim.

The remaining question is whether Defendant Shearing acted or failed to act with deliberate indifference to a known risk of serious harm.

According to the complaint, Defendant Shearing treated Plaintiff promptly after he was brought to the infirmary immediately following his injury. Defendant Shearing's apparent misdiagnosis of kidney stones may have been a mistake or malpractice, but such an error does not amount to deliberate indifference. While Plaintiff also faults Defendant Shearing for failing at that time to order pain medication, Plaintiff states that he did in fact receive pain medication from both the med tech and the other doctor who discharged him after the I.V. treatment. Even though that pain treatment did not relieve Plaintiff's discomfort, treatment that proves to be ineffective also does not constitute deliberate indifference. *See Duckworth*, 532 F.3d at 680.

Plaintiff again received treatment shortly after he requested it, when the med tech saw him on September 20, 2013. He saw Defendant Shearing for another examination a few days later. At that time, Defendant Shearing ordered further x-rays and gave Plaintiff the slow walk permit. Those actions demonstrate that Defendant Shearing was not deliberately indifferent to the need to diagnose the source of Plaintiff's problems. Likewise, even though Defendant Shearing did not personally relay the x-ray results to him, Plaintiff was informed of the arthritis diagnosis by the med tech on October 16, 2013.

Plaintiff is not satisfied with the diagnosis that he suffers from arthritis, and apparently he disagrees that this is the cause of his symptoms. However, mere disagreement with a physician's diagnosis or chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d

586, 591 (7th Cir. 1996). Again, Plaintiff does not have the right to demand specific diagnostic tests such as an MRI or to prescribe his own treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

This leaves Plaintiff's allegation that Defendant Shearing failed to prescribe him any more pain medication at the time he ordered the second x-ray. It also appears from the complaint that Plaintiff continues to suffer pain but no measures (other than the slow-walk permit) have been taken to provide him with any pain relief. If a medical provider is made aware of an inmate's ongoing pain yet fails to provide any treatment, such a failure to act may constitute deliberate indifference.

The complaint, as pled, fails to contain any facts to indicate that Defendant Shearing was notified of Plaintiff's ongoing need for pain relief. Plaintiff does not state whether he put in another sick call request at any time after he was given the Tylenol by the med tech on October 16, 2013. While Plaintiff did file two grievances after that date, the fact that he never got any response until May 2014 suggests that those grievances were not effective to give notice to any medical provider that Plaintiff was still in need of treatment. In order to establish that Defendant Shearing was deliberately indifferent to Plaintiff's ongoing pain, Defendant Shearing had to *know* about that condition but fail to take reasonable steps to alleviate Plaintiff's distress. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994). As noted above, Plaintiff shall be allowed to submit an amended complaint in order to include any facts that may support his deliberate indifference claim against Defendant Shearing.

As to Defendant Harrington, his position as Warden and the supervisory authority he held over other Menard officials are both insufficient to impose liability on him for any unconstitutional acts or omissions by a Menard medical provider or other employee. The

doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). In order for liability to attach, a Defendant must be "personally responsible for the deprivation of a constitutional right." *Id.*

The factual allegations in the complaint do not suggest that Defendant Harrington was a medical provider or was in any way personally involved in any decision regarding Plaintiff's medical care or lack thereof. If a prisoner is under the care of prison medical professionals, a non-medical prison official such as the warden "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). This presumption might be overcome if an administrator was made aware of the failure of medical staff to treat a prisoner's problem – but the complaint does not suggest this was the case. Plaintiff claims that Defendant Harrington should have been aware of the inadequate treatment because he filed grievances. Since he also states that the grievances were never answered and later could not be found, however, it is not reasonable to infer that Defendant Harrington knew anything about Plaintiff's complaints. Thus, the pleading fails to state a deliberate indifference claim against Defendant Harrington.

Because Plaintiff has requested injunctive relief and will be allowed to submit an amended complaint, Defendant Harrington shall not be dismissed from the action at this time. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

## Disposition

The Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint within 35 days of the entry of this order (on or before **December 18, 2014**). It is strongly recommended that Plaintiff use the form designed for use in this district for civil rights actions. He should label the pleading "First Amended Complaint" and include Case Number 14-cv-1134-NJR. Plaintiff should attempt to include the facts of his case in chronological (date) order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions. In particular, Plaintiff should include facts bearing on the question of whether Defendant Shearing was aware of Plaintiff's need for pain relief from the time he ordered the second x-ray to the time Plaintiff filed the instant action.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff also must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Further, Plaintiff is urged to file only *relevant* exhibits; his initial filing included many documents that had nothing to do with this action and related only to the other case Plaintiff filed on the same day. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 13, 2014**

*Nancy J. Rosenstengel*
_____
NANCY J. ROSENSTENGEL
United States District Judge