IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BERNON L. HOWERY, # B-12703, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-1134-NJR |
| ) | |
| RICKY HARRINGTON ) | |
| and DR. SHEARING, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is now before the Court for consideration of Plaintiff's First Amended Complaint (Doc. 7), which was filed on December 3, 2014, at the direction of the Court. The original complaint was dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted (Doc. 6).

Plaintiff's claims arose at Menard Correctional Center ("Menard"), where he was confined at the time he filed this action pursuant to 42 U.S.C. § 1983. He is still incarcerated at Menard and is serving a life sentence for murder and aggravated arson. Plaintiff claims that Defendant Shearing (a Menard physician) has been deliberately indifferent to his serious medical condition and that Defendant Harrington (the former Menard Warden) should also be held liable for the failure to effectively treat Plaintiff's condition.

**The First Amended Complaint (Doc. 7)**

Plaintiff's factual allegations in the amended pleading are largely identical to those in the original complaint, but he has added and clarified some material. Plaintiff injured his back on September 10, 2013, when he was 62 years of age. He was attempting to lift his property box

when something "snapped" and he felt a sudden, intense pain in his lower left back (Doc. 7, p. 16). He screamed in pain as his left leg "collapsed." *Id*. Plaintiff was immediately taken to the Health Care Unit in a wheelchair, where he was seen by Defendant Shearing.

Defendant Shearing ignored Plaintiff's attempts to tell him about the back injury and the location of his pain. When Defendant Shearing realized that Plaintiff could not get off the examining table, he ordered X-rays of Plaintiff's kidney area. Defendant Shearing "guessed" that Plaintiff was suffering from kidney stones, despite Plaintiff's protestations that he had never had kidney or gallstones (Doc. 7, p. 17). Plaintiff's pain had spread from his hip to the inside of his left thigh and toward his left knee.

Defendant Shearing ordered an I.V. for Plaintiff to induce urination and kept him overnight in the infirmary. Plaintiff complains that Defendant Shearing gave him no pain medication. A "med tech" gave him some brown pain pills that proved to be ineffective (Doc. 7, p. 10). During the night, Plaintiff twice pulled the needle out of his hand because the I.V. fluid was empty, and he feared that an air bubble would enter his bloodstream and kill him (Doc. 7, pp. 10, 18). The next day, a different doctor discharged Plaintiff and ordered a few days' supply of naproxen for his pain, which did not work (Doc. 7, p. 10).

Plaintiff requested medical treatment again because his pain had spread and grown worse (Doc. 7, p. 10). He was seen on September 20, 2013, by a med tech, who said he had injured his sciatic nerve. The med tech ordered Plaintiff to rest and stay off his feet, gave him pain medication for the next week, and gave him a temporary "eat-in-cell" permit. *Id*.

Plaintiff saw Defendant Shearing again a few days later. He briefly examined Plaintiff but offered no diagnosis (Doc. 7, p. 10). He ordered a second set of X-rays, but took Plaintiff off the eat-in-cell permit and did not order any more pain medication (Doc. 7, pp. 10, 18). Although

Defendant Shearing told Plaintiff he would issue him a "slow-walk" permit, he never did this (Doc. 7, p. 12).

The X-rays of Plaintiff's back and left side were performed on October 3, 2013. When Plaintiff heard nothing about the results, he sent a request to Defendant Shearing on October 15, 2013. The next day, a med tech came to see Plaintiff and informed him that he had a type of arthritis. She gave him a few Tylenols for pain, however, his hip, thigh, and knee continued to hurt (Doc. 7, p. 10). Defendant Shearing never gave Plaintiff any treatment to relieve his pain from the back injury, and the pain has continued (Doc. 7, p. 12).

On October 21, 2013, Plaintiff filed a grievance claiming inadequate medical treatment (Doc. 7, pp. 9-10). He filed a follow-up grievance on November 6, 2013 (Doc. 7, p. 11). He never got any response to either grievance until May 8, 2014, when a new counselor spoke to him about the matter (Doc. 7, p. 7). She later informed Plaintiff that she had no pending medical grievances from him. No medical staff ever responded to these grievances (Doc. 7, p. 6).

Plaintiff complains that Defendant Shearing's response to his medical needs was inadequate because he never diagnosed Plaintiff's injury, never treated his pain, discontinued Plaintiff's temporary "lay-in" order, and never issued the slow-walk permit (Doc. 7, p.12). Additionally, during Plaintiff's stay in the infirmary, Defendant Shearing left Plaintiff's I.V. unattended; Plaintiff removed the needle from his arm "to prevent air from entering [his] vein" (Doc. 7, p. 13). When the same thing occurred a second time, a person who may have been Defendant Shearing or another attendant re-inserted the I.V. needle but failed to re-start the drip (Doc. 7, p. 14).

Defendant Harrington failed to correct Defendant Shearing's misconduct, after "being made aware of [it] through the grievance process." *Id*. Plaintiff now seeks injunctive relief to

provide him with "immediate and thorough medical treatment including functional pain medication and an MRI, braces (if needed), and therapy," as well as compensatory and punitive damages (Doc. 7, pp. 20-22).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a threshold review of the amended complaint and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Based on the factual allegations in the original complaint, the Court found that Plaintiff had suffered a painful back injury that arguably qualified as an objectively serious medical condition. *See Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The factual allegations contained in the First Amended Complaint likewise support that conclusion.

A claim for deliberate indifference to a serious medical need also has a subjective element. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A defendant's inadvertent error, negligence, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Defendant Shearing took some reasonable steps to address Plaintiff's condition – he ordered x-rays and tried the I.V. treatment when he suspected kidney stones as the source of

Plaintiff's pain. Neither the apparent misdiagnosis of kidney stones nor the lack of attention to Plaintiff's I.V. drip rose to the level of unconstitutional deliberate indifference. But Plaintiff's clarification that Defendant Shearing never issued Plaintiff the slow-walk permit (which might have offered him some relief, as Defendant Shearing himself recognized) and never gave Plaintiff any pain medication to relieve his significant and continuing discomfort (even after diagnosing him with arthritis), indicates that the doctor may have been deliberately indifferent to Plaintiff's serious medical condition. Accordingly, Plaintiff may proceed with his Eighth Amendment claim against Defendant Shearing (designated as **Count 1**).

That leaves Plaintiff's claim (**Count 2**) against Defendant Harrington, who was Warden of Menard at the time Plaintiff sought medical treatment. Plaintiff names him in both his individual and official capacities (Doc. 7, p. 1).

As noted in the order that dismissed Plaintiff's original complaint, Plaintiff cannot hold Defendant Harrington liable merely because he held supervisory authority over Defendant Shearing. The doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). In order for liability to attach, a Defendant must be "personally responsible for the deprivation of a constitutional right." *Id.* None of the factual allegations in the complaint suggests personal involvement by Defendant Harrington in Plaintiff's medical treatment (or lack thereof).

Plaintiff alleges that Defendant Harrington was aware of Defendant Shearing's "misconduct" because Plaintiff filed two grievances. This alone is not enough to impose liability on the warden, even if he did review the grievances. And in Plaintiff's case, he notes that he never got any response to either grievance, and he was told by the counselor that no grievance was on record for him. As such, it cannot be concluded that either grievance ever made it to

Defendant Harrington's desk to inform him of Plaintiff's complaints. The amended pleading thus fails to state a deliberate indifference claim against Defendant Harrington. **Count 2** shall be dismissed without prejudice.

Because Plaintiff is seeking injunctive relief, it is appropriate for the Warden of Menard to remain as a Defendant in the action, in his/her official capacity only. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out). As Defendant Harrington is no longer serving as warden, the Clerk shall be directed to terminate him from the action, and to substitute "Menard Warden (Official Capacity)" as a Defendant. *See* FED. R. CIV. P. 21; FED. R. CIV. P. 17(d).

**Disposition**

**COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **DEFENDANT HARRINGTON** is **DISMISSED** from the action without prejudice.

The Clerk is **DIRECTED** to add as a Defendant the **MENARD WARDEN (Official Capacity)**.

The Clerk of Court shall prepare for Defendants **SHEARING** and **MENARD WARDEN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will

require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that

his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 16, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**