# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BERNON L. HOWERY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3:14-CV-1134-NJR-DGW |
| DR. ROBERT SHEARING and KIMBERLY BUTLER, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

A Motion for Summary Judgment filed by Defendant Robert Shearing (Doc. 76) and a Motion for Summary Judgment filed by Warden Kimberly Butler (Doc. 79) are pending before the Court. Howery filed a timely response to both motions. (Docs. 82, 83). For the reasons set forth below, Dr. Shearing's Motion is granted, and Warden Butler's Motion is denied as moot.

### INTRODUCTION

Plaintiff, Bernon Howery, is an inmate incarcerated at the Menard Correctional Center. He filed suit pursuant to 42 U.S.C. § 1983 alleging he was not given adequate medical care, in violation of the Eighth Amendment, after he injured his back while incarcerated at Menard. (Doc. 1). In his amended complaint filed on December 3, 2014, Howery specifically claimed that Dr. Shearing misdiagnosed him with kidney stones, an intravenous drip was not properly attended to, Dr. Shearing failed to provide proper

pain medication, and that a "slow-walk" permit was not issued. (Doc. 9, p. 5). After a merits review of the amended complaint pursuant to 28 U.S.C. § 1915A, the Court dismissed Howery's claims relating to the alleged misdiagnosis of his condition and the improper supervision of the intravenous drip. (Doc. 9, p. 6). Howery is proceeding on one count of deliberate indifference against Dr. Shearing related to his alleged failure to provide pain medication and a slow walk permit. (Doc. 9, p. 6). Defendant Kimberly Butler (Warden of Menard) was added to this suit by the Court in order to perfect any injunctive relief that may be ordered. (Doc. 9, p. 6).

## BACKGROUND

On the morning of September 10, 2013, Howery presented at the healthcare unit with severe pain in his back (left flank and hip) from lifting a property box. (Doc. 77-1, pp. 1-2). From the time of his injury, Howery described his pain as a "12" on a 10-point scale. (Doc. 77-3, pp. 20-21). The medical records indicate he was prescribed 200 mg of Motrin, and an x-ray was ordered.[1] (Doc. 77-1, p. 2). Howery was admitted to the healthcare unit where an intravenous drip was initiated and his fluid intake and output were monitored to rule out kidney stones. (Doc. 77-1, pp. 2-8). Howery was still experiencing pain in the afternoon and sought additional pain medication. (Doc. 77-1, p. 5). The nurse increased his Motrin to 400 mg. (Doc. 77-1, p. 5).

Howery testified in his deposition that Dr. Shearing saw him on September 10, 2013, and failed to listen to his complaints of pain. (Doc. 77-3, pp. 15-17). The medical records do not contain any notes from Dr. Shearing on that date (*see* Doc. 77-1, pp. 1-7),

---

[1] The results of the x-ray were reported the following day, revealing "mild osteoarthritis of the left hip joint and left sacroiliac joint." (Doc. 77-1, p. 20).

however, in his memorandum in support of summary judgment, Dr. Shearing appears to admit that he did see Howery on September 10, 2013 (Doc. 77, p. 6).

The following day, Howery was seen and discharged by Dr. Fuentes who prescribed Naprosyn, a pain reliever. (Doc. 77-1, p. 9; 77-2, p. 14). Despite an indication in the record that Howery told the nurse his back still hurt, it was determined he was ambulatory, and he was discharged back to his cell. (Doc. 77-1, pp. 9-10, Doc. 77-2, p. 2). Howery's testimony is inconsistent about whether he received and took the Naprosyn prescribed by Dr. Fuentes,[2] but he clearly testified that none of the prescribed medication provided him with any relief. (Doc. 7, pp. 9-10; Doc. 7, p. 10; Doc. 77-3, p. 35).

After he was discharged, Howery states he had to hobble back to his cell, a trip that took thirty minutes instead of the standard one minute. (Doc. 77-3, pp. 23-24). After that, Howery says he was bedridden for ten days, not even leaving his cell to eat:

> At that point, yeah, I was eating commissary at that point, if I was eating anything at all. Sometime I wasn't even eating for days. I didn't eat anything because I didn't want to be fighting with myself to get off the bunk to get into the box.

(Doc. 77-3, p. 30).

Despite being in significant pain, Howery admits he did not put in a request to see someone from the medical until approximately a week later; rather, he expected they would follow up with him. (Doc. 77-3, pp. 27-28). Once he put in a request, Howery testified Nurse South saw him the following day. (Doc. 77-3, p. 32). She prescribed 400 mg of Ibuprofen and ordered a three day medical lay-in permit. (Doc. 77-1, p. 10).

---

[2] At one point Howery testified that he received no pain medication on discharge. (Doc. 77-3, pp. 25-26). When asked specifically about Naprosyn, however, he stated he had been mistaken earlier in his testimony and did receive Naprosyn. (Doc. 77-3, p. 56).

Howery testified the medication did not help with the pain. (Doc. 77-3, p. 35).

Six days later, Howery was seen by Dr. Shearing who ordered a second x-ray[3] and performed a physical exam. (Doc. 77-1, p. 11; Doc. 77-2, p. 2). Dr. Shearing's notes indicate Howery was able to squat and walk "without any visible evidence of pain." (Doc. 77-2, p. 2). Howery disagrees, describing his pain at this visit again as a "12" on a 10-point scale (Doc. 77-3, p. 46), and indicating Dr. Shearing was belligerent during the entire visit and refused to listen to any description of his pain. (Doc. 77-3, pp. 36-37, 39). Howery further testified that based on that exam, Dr. Shearing cancelled his Ibuprofen prescription and eat-in cell permit. (Doc. 77-3, p. 39). While the medical records are silent about whether any medication was discontinued, it appears clear no additional pain medication was prescribed. (Doc. 77-1, p. 11).

Howery was not seen by Dr. Shearing again, and the medical records do not indicate he was ever treated for back pain again. (Doc. 77-1; Doc. 77-2, p. 20). Howery testified, however, that he made three or four requests for healthcare related to his back in the following six months and attempted to discuss his issues during chronic care clinics, all to no avail. (Doc. 77-3, pp. 43-44). Howery also filed two grievances, in October and November 2013, both complaining that Dr. Shearing either gave Howery no pain medication or that any medication ordered was ineffective. (Doc. 7, pp. 9-10).

Howery testified that, upon the advice of his sister, he began massaging and exercising his back regularly. (Doc. 77-3, p. 29). These exercises included stretching and "leg lifts" (where he would bring his knee to his chest while lying on his side) that

---

[3] The second x-ray revealed only degenerative changes, as opposed to acute trauma. (Doc. 77-1, p. 21; Doc. 77-2, pp. 2-3).

"relieved some of the pain over time."[4] (Doc. 77-3, pp. 30-31).

His pain eventually decreased in November 2013 and "leveled off" around December 2013 when he was moved to a cell where he had the bottom bunk. (Doc. 77-3, pp. 46-47). As of the date of his deposition, August 19, 2016, Howery had little to no pain in his back while doing his daily activities. (Doc. 77-3, p. 50).

## DISCUSSION

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Summary judgment is appropriate where the non-moving party has failed to make a sufficient showing on an element of the case to which they have the burden of proof. *Celotex*, 477 U.S. at 323. The Seventh Circuit has stated summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

---

[4] Howery's testimony and declaration indicate that he conducted these exercises in 2013. (Doc. 83-1, p. 4). However, the letter attached to his Memorandum in Opposition to Summary Judgment, which recommends back exercises and appears to be from his sibling, is dated March 3, 2014. (Doc. 83, p. 15).

## I. SUMMARY JUDGMENT — DR. SHEARING

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate he suffered from an objectively serious medical condition. *Id.* at 591-92. Second, the plaintiff must establish that the individual prison officials were deliberately indifferent to that condition. *Id.*

With respect to the first requirement, minor aches and pain do not constitute a serious medical need, but "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" constitute a serious medical need. *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). In their motions for summary judgment, neither Defendant argues Howery's back pain does not qualify as a serious medical need, thus the Court considers the issue conceded. The question before the Court, therefore, is whether Dr. Shearing was deliberately indifferent to that medical need.

Proving deliberate indifference is difficult because prison medical professionals are entitled to deference unless no minimally competent professional would have responded similarly under the same circumstances. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th

Cir. 2014). Accordingly, a plaintiff must show more than simple medical malpractice. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016).

Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment is generally insufficient, by itself, to establish deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). In other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor was actually exercising his professional judgment. *Pyles*, 771 F.3d at 409.

Howery's main contention is that he was not given adequate pain medication or medical accommodations by Dr. Shearing. (Doc. 7, pp. 9-10). The unnecessary and wanton infliction of pain can constitute deliberate indifference to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104. A plaintiff does not have to prove his complaints of pain were "literally ignored," only that the defendants' responses were so plainly inappropriate as to permit the inference the defendants intentionally or recklessly disregarded his needs. *Hayes,* 546 F.3d at 524 (citing *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

The Court notes it is unclear whether Dr. Shearing saw Howery when he was first admitted on September 10, 2013. The only notes in the medical records for the first twenty-four hours are from the nursing staff. (Doc. 77-1, pp. 1-7). Howery testified in deposition, however, that he was seen by Dr. Shearing during that time. (Doc. 15, pp. 15-16). While Dr. Shearing's affidavit does not address the issue (Doc. 77-2, pp. 1-3),

his memorandum in support of summary judgment appears to admit he saw Howery on that date. (Doc. 77, p. 6). Assuming Dr. Shearing did see Howery on September 10, but failed to write a note in the medical chart, the Court still finds insufficient evidence exists to support a finding that Dr. Shearing was deliberately indifferent.

According to the medical records, Howery was initially assessed, given 200 mg of Ibuprofen and intravenous fluids. (Doc. 77-1, pp. 1-9). The Ibuprofen dose was increased to 400 mg that evening, based on Howery's complaints of continued pain. (Doc. 77-1, p. 5). Further, the records indicate the nursing staff assessed Howery at least ten times during the twenty-four hours he remained in the healthcare unit and regularly checked his urine output to rule out kidney stones. (Doc. 77-1, pp. 1-9). Assuming that Howery was seen by Dr. Shearing that first day, it is reasonable to infer the treatment described above was pursuant to his orders or under his supervision.[5] Thus it appears that Howery was being treated and monitored.

While the Court is sympathetic to Howery's desire to reduce his pain, the fact that he continued to have pain is insufficient alone to support a finding of deliberate indifference. The law is clear inmates are not entitled to a specific course of treatment and that mere disagreement with a doctor's course of treatment cannot lead to a finding of deliberate indifference. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). There is no evidence the course of treatment allegedly chosen by Dr. Shearing—an x-ray for diagnosis, intravenous fluids to rule out kidney stones, and Ibuprofen for pain medication—was a departure from professional standards of care. *See Pyles v. Fahim*, 771

---

[5] If Dr. Shearing did not in fact see Howery that evening, then he could not be considered deliberately indifferent because he was not aware of or responsible for Howery's care.

F.3d 403, 409 (7th Cir. 2014) (to prove deliberate indifference "something more than negligence or even malpractice is required"). Thus, there is no evidence upon which a jury could find Dr. Shearing's medical decisions were deliberately indifferent during Howery's time in the healthcare unit.

The following day, Howery was discharged from the healthcare unit by Dr. Fuentes, not Dr. Shearing. (Doc. 77-1, p. 9). The medical records indicate Dr. Fuentes prescribed Howery Naprosyn, a pain reliever, upon discharge. (Doc. 77-1, p. 9, 77-2, p. 14). Howery's testimony is somewhat inconsistent about whether he received or took the Naprosyn prescribed by Dr. Fuentes,[6] but he has repeatedly stated that none of the prescribed medications provided him with any relief. (Doc. 7, pp. 9-10; Doc. 77-3, p. 35). Despite being in significant pain, Howery admits he did not put in a request to see someone from the medical until approximately a week later; instead, he expected they would follow up with him. (Doc. 77-3, pp. 27-28). There is no evidence, therefore, that Dr. Shearing was aware the prescribed medication was ineffective during the week or so after Howery was discharged.

Once he put in a medical visit request, Howery was promptly seen by Nurse South. (Doc. 77-3, p. 32). She prescribed 400 mg of Ibuprofen and ordered a three day medical lay-in permit. (Doc. 77-1, p. 10). Although Howery indicates the Ibuprofen did not provide him with pain relief, there is no evidence that Dr. Shearing was aware of that fact until he saw Howery six days later on September 20, 2013.

---

[6] At one point Howery testified he received no pain medication on discharge. (Doc. 77-3, p. 26). When asked specifically about Naprosyn, however, he stated he had been mistaken in his earlier testimony and did receive Naprosyn. (Doc. 77-3, p. 56).

During that appointment, Howery testified Dr. Shearing was belligerent and refused to listen to his explanations about the location and extent of his pain. (Doc. 77, pp. 36-37). While such behavior is not commendable, there is no question that Dr. Shearing both performed a physical exam and ordered a second x-ray. (Doc. 77-1, p. 11). Despite Howery's testimony that his pain remained at a "12" on a 10-point scale, (Doc. 77-3, p. 46), Dr. Shearing's affidavit indicates Howery was able to both squat and walk without any visible evidence of pain (Doc. 77-2, p. 2). Dr. Shearing's concluded there was "no objective basis that would indicate the need for further pain medication." (Doc. 77-2, p. 3). While this may appear to present a disputed issue of material fact, the law is clear that a prisoner's medical testimony cannot defeat summary judgment when that testimony is controverted by clear medical evidence. *Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986). Further, there is nothing in the record to suggest that given Dr. Shearing's findings, discontinuing pain medication is a departure from professional medical norms. This Court must therefore defer to Dr. Shearing's medical judgment. *Jackson v. Kotter*, 541 F.3d 688, 697-698 (7th Cir. 2008) ("[a] medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances).[7]

Howery never saw Dr. Shearing again. (Doc. 77-1, pp. 11-24). Although he testified he "put in several requests," (Doc. 77-3, pp. 43-44), the only evidence Howery was able to produce to show these requests include several handwritten notes (Doc. 83,

---

[7] Howery also complains that Dr. Shearing cancelled his "eat in" permit. The Court notes, however, that the permit that was ordered on September 20 was only for three days, and therefore was not in effect when Howery saw Dr. Shearing on September 26. (Doc. 77-1, p. 10).

pp. 8-9, "Group Exhibit A"). There is no evidence in the record those notes were ever submitted to, or received by, Dr. Shearing.[8] A doctor cannot have acted with the subjective intent that a deliberate indifference claim requires if he was not aware of a risk of harm.[9] *Cesal v. Moats*, 851 F.3d 714, 723 (7th Cir. 2017).

Thus, while Howery may have disagreed with the treatment he received from Dr. Shearing, and may have continued to experience back pain, there is no evidence upon which a reasonable jury could find that Dr. Shearing's treatment was "so significant a departure from accepted professional standards or practices" that it was deliberately indifferent to Howery's medical needs.[10]

**I. SUMMARY JUDGMENT—WARDEN BUTLER**

Warden Butler argues that because Howery has not sued any state actor in his or her individual capacity, the claim for injunctive relief against Warden Butler is barred by sovereign immunity. (Doc. 80, p. 1). The Court notes that such an argument has not been adopted by the Seventh Circuit Court of Appeals, which has instead indicated that a warden is an appropriate defendant in such cases. *See Gonzalez v Feinerman*, 663 F.3d 311,

---

[8] The documents filed with the Court appear to have subsequently dated notations in Howery's writing, indicating what, if any, response he received. While these contemporaneous notes suggest Howery wrote requests to see Dr. Shearing, they do not provide any evidence as to whether such notes were received. As such, they cannot provide a factual basis for finding Dr. Shearing was aware that Howery continued to be in pain.

[9] The Court also notes that from October 3, 2013 through May 8, 2014, Howery was seen multiple times for medical issues unrelated to his back. (Doc. 77-1, pp. 12-19). Howery testified that he attempted to raise his continued back pain during these appointments, but was rebuffed. (Doc. 77-3, pp. 43-44). While that may be true, the Court notes that none of these appointments were with Dr. Shearing, and therefore, even if his back pain was ignored, they cannot be a basis for finding Dr. Shearing was deliberately indifferent.

[10] Howery also complains Dr. Shearing failed to issue him a "slow walk" permit. (Doc. 9, p. 6). While this allegation is supported by the medical record, Howery testified he was never disciplined for walking at a slow pace or falling out of line. (Doc. 77-3, p. 57). Rather, the corrections officers "just let me take however much time it took." (Doc. 77-3, p. 57). Because Howery suffered no negative physical or institutional consequences as a result of not receiving a "slow walk" permit, the Court finds the allegations are insufficient to support an Eighth Amendment violation.

315 (7th Cir. 2011). The Court need not delve into this argument, however, because the Court's finding that Defendant Shearing is entitled to summary judgment eliminates any possibility of injunctive relief. Accordingly, Warden Butler's Motion for Summary Judgment is moot.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendant Shearing is **GRANTED** (Doc. 76) and the Motion for Summary Judgment filed by Defendant Butler is **DENIED as moot** (Doc. 79). The claim against Defendant Butler is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Shearing and against Howery and close this case.

**IT IS SO ORDERED.**

DATED: September 20, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**